Judge Marshall
delivered the Opinion of the Court.
This case presents a contest between creditors contending for a priority of lien upon the property of A. G. Henry, their common debtor.
On the 19th of September, 1832, Henshaw & Co. filed their bill in the Jefferson Circuit Court, setting up two bills of exchange which had been drawn by them and accepted by A. G. Henry, for nine hundred and five dollars forty cents each, and payable to D. Henshaw, by whom they were endorsed over. The bill alleges that Plenry failed to pay the bills at maturity; that they were regularly protested, and afterwards taken up by the complainants.; and that Henry has removed from the state* leaving certain property in the hands of J. W. Breeden, a resident; vvhich property they pray may be taken into the hands of the sheriff, and by decree subjected to the satisfaction of their debt. The usual process issued on the bill, against Henry and Breeden, and on the same day (the 15th of September,) the property ip question was taken into possession by the sheriff.
In an amended bill, subsequently filed, the complain-, ants state, that H. J. Miller and G. Pulling assert claim to the property, under a mortgage, or deed of trust, which they allege to be fraudulent,'and at any rate void; and by this bill, Miller and Pulling are made defendants, Their answers set up and rely upon a deed of trust purporting to have been executed by A. G. Henry, on the 18th of August, 1832, and to convey the property (consisting of medicines, drugs, and all the articles and furniture belonging to an apothecary and drug store,) to J. C. Henry, with power to sell them, and out of the proceeds, to satisfy certain debts stated in the deed to be Aue to Miller and Pulling, in case those debts should not *326 be paid when demanded; the surplus, if any, to be paid over to A. G. Henry. They aver that the debts mentioned in the deed are really due to them; that the deed was executed in good faith, and making their answers cross hills against the complainants and J. C. Henry, the trustee, they insist upon their prior lien under the deed, and pray that their debts may be satisfied out of the proceeds. The trustee’s answer corresponds in its statements with those of Miller and Pulling, and supports the deed.
When an accepted bill is taken np by the drawer, he acquires a perfect right to |ue the acceptor in his own name: Subsequent parties have no further interest in the matter, and are not proper parties to any suit in chancery founded upon it.
An allegation by pompl’ts, drawers of a bill, that they took it up, not being denied by the acceptor, jnust be taken as [rue against him; and the production of the bill & protest by” the drawers, is sufficient (in the absence of proof jo the contrary) against other par ties who put the fpcts in issue.
The attached property was sold, by consent, before the hearing; and the proceeds falling greatly below the sum stated in the decree to be due to the complainants, the whole is appropriated exclusively to their demand. From this decree the defendants, Miller and Pulling, and A. G, Iienry, the debtor, have appealed to this Court.
The first objection which, under the assignment of errors, requires notice, is, that Edward Shippen, the last indorsee of each of the bills of exchange, was not made a party. But if it be true, as stated by the complainants, that they took up the bills after protest for non-payment, they acquired, by that fact, the perfect right of suing the acceptor in their own names; and by the same fact, the subsequent parties to whom the bills may have been endorsed, ceased to have any farther interest or right in them; and were, therefore, neither necessary nor proper parties.
So far as A. G. Henry, the acceptor, is concerned, the complainant’s bill having been taken for confessed against him, for want of answer, this allegation with all its consequences stands admitted. And conceding that the other defendants have a right to make the question, th^t they are pnaffected by the admission of Plenry, and that this allegation of the bill was put in issue by their general requisition of proof of the complainant’s demand against Henry: still, we apprehend, the production on the part of the complainants, of the bills of exchange and protests, is sufficient, in the absence of all pi’oof to the contrary, to establish the fact as alleged by them, and to sustain their title to the bills, and to a suit on them. Duncan vs. the United States, 3 Wheaton, 172; *327 Bell vs. Morehead, 3 Marshall, 168; Tuggle vs. Adams, Ib. 132.
Question upon the sufficiency of the proof of a deed of trust, as against creditors, who attached the commodities con veyed.
A mortgage must be lodged with the clerk to be recorded, “within 60 days after its execution:” the 60th day after its date is ira time.
By a statute of 1820, amortgage or deed of trust, to be valid against creditors & purchasers, may be recorded, upon acknowledgment or proof thereof by two subscribing witnesses, “according to the existing laws.” An act of 1776, prescribes the mode in which the acknowledgment of deeds by a person not in this state, shall betaken and certided, and is unrepealed (except where it requires three witnesses to a deed act applicable to deeds, by non-residents, of personal property here. j) and is the only
The evidence, moreover, sufficiently proves, that the bills of exchange were accepted by Henry, in consideration of goods furnished to him by the complainants, and that the same goods constitute a considerable portion of the property now in contest. The indebtedness of Henry to the complainants, being thus established, to an amount exceeding the proceeds of the attached property, and Henry being shown to have been absent from the state when the bill was filed; the propriety of postponing the demand of Miller and Pulling—who are also proved to be real creditors, to that of the complainants, presents the only remaining point of serious enquiry. And this involves, in the first place, the question whether the deed under which Miller and Pulling claim,'has been sufficiently proved by regular authentication or otherwise.
The deed bearing date on'the 18th of August, 1833, was lodged for record in the proper office, on the 17th day of October following, being the 60th day after its date. The statute of 1820 (1 Slat. Law., 449,) requires it to be lodged “within sixty days after its executiori;” and, according to the mode of computation universally adopted in this country, excluding one of the days and including the other, the requisition in this particular seems to have been complied with.
But, by the same statute, the deed is declared not .to be good or valid against any creditor, unless within sixty days after its execution, it was, upon the acknowledgment of the parly, or proof by two subscribing witnesses, “according to thé existing laws,” deposited for record in the proper office.
As this deed appears to have been acknowledged in the state of Missouri, and to be certified by officers of that state, we are to enquire what were the existing laws regulating the proof or acknowledgment of conveyances executed out of this Commonwealth. In the multitude of statutes regulating conveyances, there are but few provisions'relating expressly to deeds of personal *328 estate, and in most instances, the language applies ex« clusively to conveyances of real estate. The statute of 1776, omitted in the late edition of the Statute Laws, but which is to be found in the Digest of the Statutes, vol* ___._ page 306 [and 4 Litteu's Laws, 432,] seems to be the. only one which can be properly applied as directing the mode of proving and certifiying deeds, out of this state, by which personal property within it is intended to be conveyed. It is contended on the authority of the ease of Hyne's Reps. vs. Campbell, 6 Mon. 289, that this statute is repealed, and that there is no statute authorizing the proof or acknowledgment of this deed out of the state. It Was, doubtless, oil this ground, that the provisions of this statute were omitted in the late compilation. But as it is no where repealed by express words, but only by construction, in consequence of the inconsistency of its provisions with those of subsequent statutes, and as none of the subsequent statutes relate to the authentication of deeds of personalty, out of the state, except those which reduce the number of witnesses from three to two, there can be no inconsistency, and therefore no constructive repeal of so much of this statute as relates to deeds of personalty, except as to the number of witnesses. The same question arising on the statute of 1748, was decided in the same way, in the case of M'Gowan vs. Hoy, 5 Liltell, 244; and the case of Hyne's Reps. vs. Campbell (supra,) is to be understood as deciding only that so much of the act of 1776 as relates to the authentication of conveyances of real estate by non-residents, is repealed.
The act of >76 Seed'wlwtever'of any estate in this ma”™o^ltnowl edged elsewhere, omher ohfefma gistrate of the ornearwhichthe grantor may reisno’cityortow'n corporate^in his fortftwo 'magistratas of thecousi ty, who shall cer tify the same tinder their hands & seals, and whoso official character must be certified by the Gov. &c, or by the clerk of the county court, under the county seal. ,
*328 The statute of 1776 provides, that all deeds made by Persons residing out of this country, for passing lands, tenements, or other estate within the Commonwealth, may acknowledged or proved before the Mayor or other chief magistrate of the city or town near which the grantor resides, &c. Or where the grantor resides in the U. States, and there shall happen to be no city or town colporate within his county, “a certificate under the hands and seals of two justices or magistrates of the county, that such proof or acknowledgment hath been made before them,” together with a certificate from the Govern- or, &c. or from the clerk of the county court, under the *329 ¡county seal, that the persons certifying are justices within the same, shall authorize the deed to be recorded, and make it éffectual.
The clerk of the county court of St. Louis certifies, that the persons who certify the' acknowledgment of a deed, are justices of the peace for that county, in testimony whereof, &c. he has affixed the seal of said court, attheeity of St. Louis.— Held, that this attestation is pri ma facie evidence, that there is a city (St. L.) in tho county of St. Louis; consequently, that the mayor was the proper officer to certify the acknowledgment; tho justices not authorized, and their .certificate no evidence of the execution of ■the deed.
Tlie statute requires that magistrates taking itbo acknowledgment of a deed, shall certify it un tier their hands and seals: a certificate signed by two justices, but without their seals, is fatally defective. It is only by force of the statute, that the certificate ,js evidence of the fact; and the statute is as imperative in requiring the seals .of .the justices ff§ if he seal of the grantor, and gives no efficacy to an unsealed certificate.
The acknowledgment, of the present deed is certified, but not under seal, by two persons styling themselves justices of the peace in and for the county of St. Louis, Mo. And their official character is attested by the certificate of the Clerk of the county court of St. Louis county, authenticated by the seal of the Court, and concluding with the following attestation: “In testimony whereof, I have hereunto set my hand and affixed the seal of said Court, at the city of St. Louis, this 10th day of October, 1832.” We are strongly inclined to the opinion that, the statement in this attestation, that the seal was affixed at the city of St. Louis, coupled with the legal presumption that the seal of the Court of St. Louis county is kept and used in the county to which it belongs, furnishes prima fads sufficient evidence that, the city of St. Louis is in the county of the same name, or that the two are identical. The only question is, whether the statement that the seal was affixed at the city of St. Louis, is any evidence of that fact; and, as it is a part of the authentication on which the party relies for supporting the deed, we are disposed to think that it should be taken as at least pt'ima facie evidence, It appears then, that there is a city in the county in. which the maker of the deed resided; and in that case, the statute •gives no authority to two justices of the county, either •to receive or certify the acknowledgment or proof of the deed; and their certificate furnishes no evidence of its execution, either for the purpose -of admitting it to record, or of proving it before any legal tribunal.
But if we are mistaken in supposing that the statement in the Clerk’s attestation, furnishes some evidence that there is a city or town corporate within the county of St. Louis, and if it must be admitted that, in the absence’of all affirmative proof to that effect, two justices of the county have authority to take and certify the *330 proof or acknowledgment of the deed: still the certifícate of the justices is, in our opinion, fatally defective iri the want of a seal or seals’ annexed to their names, as express! 3r required by the statute. It will not do for us to say that the seal is a more formality, which in point of reason can add nothing to the solemnity or authenticity of the certificate. The authority which requires this certificate to-be under the' seals of the justices, is as high as that which requires a deed to be under the seal of the grantor; and we can no more dispense with it in the one case than in the other. It is only by force of the statute, that the certificate of two justices has any weight as evidence of the execution of the deed; andas the statute gives effect only to a certificate ‘under the hands and seals of the justices, the certificate, without their seals, is not the instrument described by the statute,derives no force or dignity from it, and is no proof of any fact, except against the justices themselves by whom it is signed.
If the certificate of acknowledgment is insufficient, the fact, that the deed was deposited for record in due time, 'and actually recorded, avails nothing: it is still on the footing of anunreeorded instrument. Suggestion, that when the subscribing witnesses to a deed of trust appear to be accessible, so that their evidence as to its execution and delivery, and as to the time of delivery, might have been taken, and they are not examined on those points,— the omission is very unfavorable to the conclusion that the deed was executed at the time of its date: and held, that the proof in this case, that the deed was in fact made and delivered before the attachment was inefficient! ° y
*330 The requisitions of the statute with respect to the proper acknowledgment of the deed, not having been-complied with, it derives no aid from the fact that it was deposited for record within the proper time, and that it has actually been recorded. It stands, notwithstanding these facts, as an unrecorded instrument, deriving no aid from the certificates upon it; which neither prove its execution, nor dispense with other legal proof of that fact. And the next question is, whether this record presents any such proof. After a most scrupulous examination of the testimony, we are of opinion that there is none which can be deemed sufficient to establish the deed. Several witnesses, it is true, speak, in vague and general terms, of a mortgage to secure the debts due from A. G. Henry to Miller and Pulling. But none of them prove the actual execution of this, or any other deed, nor is there any proof of the handwriting of the grantor or witnesses. And although the deed purports to have been signed, sealed and delivered, at the city of Louisville, in presence of two witnesses, neither of them has proved these facts, either before the clerk, for the purpose of admitting' the deed to record, nor, by *331 way of deposition, for the purpose of proving it before the Court. This omission is itself calculated to raise some unfavorable inferences against the deed, even if its execution by the grantor at some time or other, were admitted. For in this contest for priority of lien, the date is all important. And if the deed had been in fact executed when it bears date, and in presence of the witnesses, (of whom one is a witness in this case, and neither is shown or stated to have removed from Louisville,) it is strange, that instead of proving it by them, in the clerk’s office, it was subjected to all the hazards of a transmission to and from St, Louis, at the latest admissible period, and to the additional hazard of informality in its authentication. And it is equally strange that.. instead of the direct evidence of the same witnesses as to its delivery, the vague expressions of one of them, and of one or two others who pretend to no knowledge on the subject, should have been relied on to supply the deficiency of regular authentication. There is no attempt to account for these omissions. And they have left the proof in relation to the deed, so indefinite and unsatisfactory, that it would be unsafe, as well as incon-. sistent with the established rules of evidence on the subject, to consider the deed as sufficiently proved.
, ore amend their a?cl oliai°a the goods attach-, of’ awhich they allege, is voWalTocreditore: thisdoesnot amount to an admission that the deed was in fact executed at the time of the date, or at-any time.
If there was any thing in the amendment calculated to throw the defendants oft’ their guards and prevent their talcing proof—when exceptions were taken to the deed, for want of prqpfj ^irpe should haye been given to take the proof. ' *
If the deed had been read without, exception in tha Circuit Court, the question here would have been different; but it was in fact rejected, in that Court, on exceptions taken to it for want of sufficient authentication,, and proof, and it is made a part of the record by a bill of exceptions taken to the opinion of the Circuit Court op that point. It is suggested in argument, that the amended bill, which notices the claim of Miller and Foiling as being set up under a mortgage, or deed of trust, and charges that it is fraudulent, or otherwise void, is such a recognition of its actual existence and genuineness as dispenses with direct proof of the fact; and that, at any rate, it was calculated to throw the defendants off of their guard on this point. It is apparent, however, that *332 the complainants did not pretend to know, or to state with precision, the character of the instrument under which the defendants set up claim; and it cannot be conceded that, the general expressions used in bringing the defendants and -their claim before the Court, should have the effect of substantial admissions, Certainly, the defendants cannot claim that a forged deed shall be considered as genuine, or that a deed antedated shall be deemed valid from its apparent date, because the complainants charge that ‘the mortgage, or other instrument under which they claim, is without consideration and fraudulent, and at any rate, void.’ The instrument might be fraudulent, because it was antedated, and it might be void for want of due execution. And we consider these ppints as well as others affecting the deed, as being in issue under the pleadings.
If the language of the amended bill had, in fact, been such as to mislead the defendants, and throw them off of their guard as to the necessity of making exact proof of the deed, they might, on that ground, have asked, and ■yvould probably have obtained, leave to take the requisite proof, when by the exceptions taken to the admission of the deed as evidence, they were apprised of their mistake. Their omission on this third occasion, to resort to the direct evidence of the subscribing witnesses, exposes them still more to those unfavorable inferences which the law establishes under such circumstances.
Upon the whole, we are of opinion that, the deed is not sufficiently proved, and that it was properly rejected by the Circuit Court. This opinion, of course, puts an.end to the claim of Miller and Pulling to have their debts first satisfied out of the attached property, upon Which, so far as the complainants are concerned, they cannot be considered as having any lien. The rejection of the deed, for want of proof, cuts off the enquiry into its fraudulency, and all discussion of the question made in the argument, as to the effect which a Court of Equity should give to it in the present contest, as an unrecorded deed, and leaves no other enquiry affecting the merits of the decree.
The surety in the bond,. given by the comp’t,in au attachment suit, to secure the defendant his costs and damages, is not a competent witness for complainant. — But if his deposition proves to be entirely immaterial, the decree will not be reversed for the error of admit» ting it.
A question is made, by the assignment of errors, as to jthe refusal of the Court to reject the deposition of C. pi. Lewis, a witness for the complainants, excepted to, .on the ground that he was their surety in the bond executed on their part, for securing costs and damages, in case the restraining order prayed for by them, should be dissolved. We have no doubt this witness was incompetent, as being interested in the event of the suit. And the Court erred in not rejecting his deposition. But as his testimony has no relation to the questions which have been discussed, and on which, in our view of it, the decision of the case as presented in this record, depends, this error is entirely immaterial, and is no ground for reversing the decree: which is therefore affirmed.